UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff-Respondent,          Case Number 25-50167
v.                                                            Honorable David M. Lawson

EDWARD LEE DICKERSON,

          Defendant-Claimant.
_____/

**OPINION AND ORDER DENYING MOTION FOR RETURN OF PROPERTY**

    Plaintiff Edward Lee Dickerson commenced this action asking the Court to order the government to return certain property seized by means of a search warrant in connection with the criminal case that led to his conviction before this Court. He relies on Federal Rule of Criminal Procedure 41(g). The search warrant was executed by federal and state agents working together. The government asserts that the property Dickerson seeks was never in federal custody, but rather it was always in the possession of the Michigan State Police. Subsequently, the parties revealed that Dickerson has recovered some of the property subject to the motion, and the rest of it was the subject of a state forfeiture judgment. Because the government is not in possession of the property Dickerson now seeks, his motion must be denied.

I.

    On March 21, 2023, Dickerson was charged in a six-count indictment with several firearm and drug-based crimes. On July 28, 2023, he pleaded guilty under a plea agreement to possessing with intent to distribute fentanyl, possessing a stolen firearm, and possessing a firearm in furtherance of a drug trafficking crime. The Court sentenced him to a prison term of 108 months on January 28, 2025.

Dickerson's criminal case originated from a tip received by the Michigan State Police Metro Narcotics Enforcement Team (MNET) that an individual named as "Ed" was selling narcotics out of his residence. After determining that "Ed" was the defendant, MNET detectives surveilled his residence and observed conduct consistent with drug dealing. Criminal Compl. ¶¶ 6-7. They also identified evidence of drug transactions in a trash can outside the defendant's residence. *Id.* ¶ 8. Based on those observations, the investigators obtained a search warrant for the residence from Michigan's 34th District Court in Romulus. *Id.* ¶ 10; *see also* Search Warrant, ECF No. 56-1. On March 14, 2023, MNET officers executed the warrant. Agents of the Bureau of Alcohol, Tobacco, and Firearms (ATF) also were present. *Id.* ¶ 11. According to a declaration submitted by ATF Special Agent Michael Jacobs, law enforcement officers seized drugs and several firearms they discovered on the premises. Decl. of Michael Jacobs, ECF No. 4-1, PageID.17. They also seized other items, including two motor vehicles, jewelry, iPhones, and cash. *Ibid.* Jacobs represents that ATF agents took possession of the drugs and firearms but left the remaining items in the custody of the Michigan State Police. *Ibid.*

On February 13, 2025, the defendant, without the assistance of counsel, filed a motion for the return of property retained by the government. He seeks 1) a gold necklace with diamonds, 2) a different gold necklace, 3) a gray 2022 Lexus RX 350, 4) a 2021 Dodger Charger, 5) documents associated with both vehicles, 6) a silver iPhone, 7) a pink iPhone, 8) two black iPhones, 9) an iPhone in a blue case, and 10) $1,844 in U.S. currency. ECF No. 1. The Court appointed counsel and directed the government to respond.

The Court held a hearing on the defendant's motion on June 5, 2025. During the hearing, the parties informed the Court that some of the items sought by the defendant were the subject of a forfeiture proceeding in the Wayne County, Michigan circuit court that led to a judgment. The

Court therefore directed the parties to file supplemental submissions formally adding that information to the record and addressing the impact of the state court judgment on the present motion.

The government attached to its supplemental brief a copy of the forfeiture judgment, which was entered on August 18, 2023 by Wayne County circuit court judge David J. Allen as a default judgment after Dickerson failed to respond to the summons and complaint. ECF No. 8-3. The judgment forfeited to the Michigan State Police Metro Enforcement Narcotics Team the vehicles, jewelry, and U.S. currency that are the subject of Dickerson's petition. *Id.* at PageID.57. Dickerson also sought the return of several iPhones, but his attorney informed the Court after the hearing that he had recovered them from the Michigan State Police.

II.

Dickerson bases his motion on Federal Rule of Criminal Procedure 41(g), which creates a civil equitable action for the return of property once a defendant's criminal proceedings have concluded. *United States v. Dusenbery*, 201 F.3d 763, 768 (6th Cir. 2000) ("Rule 41(e) [now 41(g)] proceedings are equitable in nature if criminal proceedings are no longer pending."). The Rule states that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property" may file a motion for the property's return in the district where the property was seized. Fed. R. Crim. P. 41(g). The foundation for Dickerson's invocation of this rule is the basic premise that "seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." *Savoy v. United States*, 604 F.3d 929, 932 (6th Cir. 2010) (quoting *United States v. Hess*, 982 F.2d 181, 186 (6th Cir. 1992)).

However, Rule 41(g) is not properly invoked as an end-run around forfeiture proceedings, once properly initiated. *United States v. Darden-Mosby*, 101 F.4th 465, 473 (6th Cir. 2024). The

- 3 -

Sixth Circuit reasons that because the remedy in Rule 41(g) is equitable, it must yield to statutory forfeiture proceedings, which provide an adequate remedy at law. *Shaw v. United States*, 891 F.2d 602, 603 (6th Cir. 1989) ("Under standard equity doctrine, where there is an adequate remedy at law it must be pursued."). Therefore, "[o]nce the government initiated civil proceedings against her, [a claimant] [is] required to follow the statutory procedures set out" in the forfeiture legislation. *Ibid.*

Dickerson faces a number of insurmountable obstacles that prevent his recovery of the cash, jewelry, and vehicles. First and foremost is the forfeiture judgment that was entered by the Michigan court. That judgment vested title to the property in the Michigan State Police Metro Enforcement Narcotics Team. *See* ECF No. 8-3, PageID.57. The impact of that judgment creates at least two problems for Dickerson.

First, that judgment establishes that the property is not in the federal governments' custody, which is a prerequisite to an order directing the government to return it under Rule 41(g). It is elemental that a court "cannot order the Government to return something that it does not have." *United States v. Buckner*, No. 13-20299, 2018 WL 2184357, at *4 (E.D. Mich. May 11, 2018); *see also United States v. Price*, 841 F.3d 703, 707 (6th Cir. 2016) ("[T]he federal government never possessed the property at issue, and the district court was correct to deny the motion.").

Dickerson counters that the government nevertheless is subject to a Court order under Rule 41(g) because it constructively possessed his property, since the search was conducted as part of a joint federal-state investigation. In circumstances where property allegedly is possessed by state, rather than federal, officials, several courts in this circuit have cited as persuasive the Tenth Circuit's analysis in *Clymore v. United States*, 164 F.3d 569, 571 (10th Cir. 1999), which lists three circumstances where Rule 41(g) may be used to seek the return of property against federal

defendants. *See Taylor v. Tennessee*, 230 F.3d 1360, *1 (6th Cir. Sept. 21, 2000) (table); *United States v. Morris*, No. 11-149, 2018 WL 11306066, at *2 (W.D. Mich. Nov. 15, 2018); *United States v. Hardin*, No. 05-105, 2015 WL 1811135, at *6-7 (E.D. Tenn. Apr. 21, 2015), *aff'd* (Nov. 20, 2015); *United States v. Ford*, No. 05-21, 2007 WL 837238, at *2 (E.D. Tenn. Mar. 15, 2007). According to the Tenth Circuit, "[t]hose circumstances include actual federal possession of the property forfeited by the state, constructive federal possession where the property was considered evidence in the federal prosecution, [and] instances where property was seized by state officials acting at the direction of federal authorities in an agency capacity." *Clymore*, 164 F.3d at 571 (citing *United States v. Solis*, 108 F.3d 722, 722-23 (7th Cir. 1997)).

Dickerson does not seriously press the first two points. But he insists that the cooperation between federal and state authorities in executing the search warrant is sufficient to establish federal "possession." That position may be sound as a matter of policy for many of the reasons he describes in his reply brief, but it does not find strong support in the case law, and the cases he cites do not lend him much — if any — support.

He first quotes a portion of *United States v. Solis*, 108 F.3d 722 (7th Cir. 1997), suggesting that property seized by state officials becomes a federal responsibility when the investigation was conducted "with federal officers' knowledge and cooperation." ECF No. 6, PageID.20. No such language appears in that opinion. (His reply brief cites page 725 of the opinion, but the opinion concludes on page 723 of the federal reporter.) In any event, the *Solis* court merely held that the claimant's theory that federal officials constructively possessed his property did not suffice because there was no evidence that the vehicle in question was "seized during an operation conducted by state officers *at the direction of federal authorities*." *Solis*, 108 F.3d at 723 (emphasis added).

Next, Dickerson cites *United States v. Fabela–Garcia*, 753 F. Supp. 326 (D. Utah 1989). There, the property in question was seized by and remained in the possession of the Utah Highway Patrol and Division of Public Safety, but the local prosecutor handed off the prosecution to federal authorities. After the criminal case concluded, the defendant sought the return of his property, but the government resisted on the ground that the property was not in its possession. The court disagreed. It emphasized that the property was in the constructive possession of the federal government because the local prosecutor "deferred to the United States in *all* aspects of the prosecution." *Fabela-Garcia*, 753 F. Supp. at 328. If there were evidence that the Michigan task force deferred to federal authorities here, that case might help Dickerson. However, the Tenth Circuit since has clarified that its later decision in *Clymore* narrows the breadth of the constructive possession theory articulated in *Fabela–Garcia* to the extent that it bases "constructive possession on federal prosecution alone, even when the state's holding of the property had not been for the benefit of that prosecution." *United States v. Copeman*, 458 F.3d 1070, 1072 (10th Cir. 2006); *see also United States v. Price*, No. 14-26, 2016 WL 8914562, at *2 n.3 (W.D. Mich. Jan. 22, 2016), *aff'd*, 841 F.3d 703 (6th Cir. 2016) (finding no authority to support the contention that the federal government could be deemed to constructively possess property seized in a search merely because he was prosecuted federally).

Dickerson pivots to *Clymore* itself, insisting that it stands for the proposition that "constructive possession exists when property is seized by state officials at the request of federal officers or as a result of joint state-federal investigations." ECF No. 6, PageID.21. However, no such language appears in the opinion. Rather, the court squarely held that the fact that "federal authorities controlled the ongoing investigation and were 'involved' in the seizures, without more, is insufficient to establish the extensive federal possession or control necessary to make [Rule

41(g)] the appropriate vehicle by which to recover the state-forfeited property." *Clymore*, 164 F.3d at 571.

Finally, Dickerson cites *In re Seizure of $82,000*, 119 F. Supp. 2d 1013, 1018 (W.D. Mo. 2000), for the idea that property is "in constructive federal possession when the federal government had more than mere knowledge of the state seizure and there was a collaborative effort." ECF No. 6, PageID.22. But that statement does not appear in that decision. Instead, the matter dealt with whether the owners of a vehicle, obtained at a federal auction, were entitled to keep a large sum of cash, presumed to be drug proceeds, that they discovered in the vehicle's gas tank. Rule 41(g) expressly was not at issue because the case concerned an administrative forfeiture proceeding, and no one appears to have disputed whether possession of the vehicle initially was properly with the state or federal governments. *In re Seizure of $82,000*, 119 F. Supp. 2d at 1015 n.2.

Here, the undisputed evidence demonstrates that federal agents were merely "present" during the search of Dickerson's residence, which was conducted pursuant to a state search warrant and as part of what *might* be characterized as a joint federal-state investigation. (The record is not clear about whether the MSP MNET program is a combined operation or whether federal officials merely were bystanders.) The presence of federal agents for the search is a significant consideration, but courts generally have not found that state officials acted at the behest of federal authorities merely on account of their participation in a federal-state task force. *See United States v. Williams*, No. 07-06, 2010 WL 1752530, *1 (W.D. Mich. Apr. 27, 2010) (indicating that joint task force officers are deemed to be working "*with* the federal government, not *for* the federal government."); *United States v. Vanover*, No. 11-61, 2016 WL 7669501, at *5 (E.D. Tenn. Nov. 18, 2016), *report and recommendation adopted*, 2017 WL 87034 (E.D. Tenn. Jan. 10, 2017). This Court has concluded similarly. *United States v. Hayden*, No. 99-20011, 2009 WL 3872146, at *2

(E.D. Mich. Nov. 18, 2009) ("Hayden argues that federal agents worked with the task force that seized documents and records that were used at his federal trial. Perhaps that is so, but this argument has nothing to do with whether a federal agent or agency ever possessed the horses and the horse trailer that he wants returned."). The investigators' use of a state search warrant further undermines the idea that state officials merely were acting as federal agents. *See Williams*, 2010 WL 1752530, *1.

This conclusion might appear unsatisfying given the reality that federal officials likely *could have* — as a matter of investigative prudence, inter-agency cooperation, and mutual respect — taken possession of all of the items Dickerson now seeks. Some of the materials, including the currency, possibly could have bolstered the federal case against him. But the caselaw requires something more before the Court may order relief against the federal government as to property not in its possession under Rule 41(g). The record does not support Dickerson's constructive possession argument. Moreover, the forfeiture judgment forecloses any residual interest that the federal government may have in the cash, jewelry, and vehicles, since the state asserted and first acquired *in rem* jurisdiction over the property. *Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935) (holding that for actions that are *in rem* or quasi *in* rem, "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other"); *see also Chapman v. Deutsche Bank Nat. Tr. Co.*, 651 F.3d 1039, 1043-44 (9th Cir. 2011) (citing *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939)); *Coast-to-Coast Produce, LLC v. Lakeside Produce USA, Inc.*, 709 F. Supp. 3d 413, 426 (E.D. Mich. 2023). And the forfeiture judgment extinguishes and interest the federal government had in the property.

The second problem that the forfeiture judgment poses is jurisdictional. Dickerson argues that the judgment is defective because he never received notice of the state forfeiture proceedings. Aside from the state court's finding that Dickerson was personally served with process in that case, ECF No. 8-3, PageID.56-57 (reciting that Dickerson had "been personally served with a summons and complaint"), he cannot collaterally or directly attack a state court judgment in a federal district court. *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) ("The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court.") (citing *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 291 (2005)). "*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), hold that only the Supreme Court may review judgments entered by state courts in civil litigation." *Fowler v. Benson*, 924 F.3d 247, 254 (6th Cir. 2019). The eponymous "doctrine, therefore, bars a lower federal . . . court from reviewing a plaintiff's claim when a state court's judgment is the source of the plaintiff's injury." *Ibid.*

Insofar as Dickerson attacks the state forfeiture judgment as vesting title to the cash, jewelry, and vehicles in the Michigan State Police Metro Enforcement Narcotics Team, he runs headlong into *Rooker-Feldman*. That doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. The state civil forfeiture proceeding in this matter was commenced on June 12, 2023. ECF No. 8-2, PageID.54. Dickerson filed his motion under Rule 41(g) on February 13, 2025. If Dickerson wants to attack the state forfeiture judgment on notice deficiency or any other ground, he must seek relief in state court.

Moreover, the majority of courts that have considered the application of the *Rooker-Feldman* doctrine when a party brings a motion under Rule 41(g) and state forfeiture proceedings already had concluded hold that the doctrine divests them of jurisdiction to proceed. *See Mohamed v. United States*, No. 24-01884, 2024 WL 4191728, at *3 (N.D. Tex. Aug. 15, 2024), *report and recommendation adopted sub nom. Muhamed v. United States*, No. 24-1884, 2024 WL 4194335 (N.D. Tex. Sept. 13, 2024); *Ivy v. Fresno Police Dep't*, No. 23-01072, 2023 WL 7130659, at *6 (E.D. Cal. Oct. 30, 2023); *Doggins v. Green*, No. 18-383, 2020 WL 5587238, at *2 (E.D. Tex. Sept. 18, 2020); *Pennsylvania v. Sixty-Eight Thousand Nine Hundred Fifty Dollars in U.S. Currency*, No. 14-622, 2014 WL 2605426, at *2 (W.D. Pa. June 10, 2014).

Dickerson has not established that the federal government has possession — actual, legal, or constructive — of the property he wants back. Rule 41(g) provides him no basis for relief.

III.

Movant Edward Lee Dickerson has not shown that the government has authority over the property seized earlier under a state-court-issued search warrant. He has not established the requisites for the return of that property to him under Federal Rule of Criminal Procedure 41(g).

Accordingly, it is **ORDERED** that the motion for return of property (ECF No. 1) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: August 11, 2025